WALTER KNUTZEN v. CHARLES E. HANSON ET AL., APPELLEES, '

IMPLEADED WITH W. J. COOPER ET AL., APPELLANTS.

[FILED JANUARY 23, 1890.]

1. **Mechanic's Liens :** PROCEEDINGS TO ESTABLISH. Where notes are given for the payment of the amount due a contractor for work and material furnished in putting in pipes, radiators, etc., for steam-heating a building, copies of such notes, duly filed in the proper office, accompanied by an affidavit of the proper party, setting forth that the debt was incurred under a contract with the owner of the building for the putting in of such material in said building, and that said notes are unpaid, etc., for the purpose of obtaining a lien under the statute upon the premises, are sufficient to entitle the party to a lien.

2. **Warranty :** HEATING APPARATUS. Where a party contracted with the owner of a building to put in steam pipes, radiators, etc., for the purpose of heating the building, the owner to furnish the boiler, and it appeared that the boiler leaked, and was unfit for the purpose intended, and consumed a large amount of fuel, *held*, that defects in the boiler could not be charged to the party who furnished the pipes and radiators, and as such material appeared to conform to the contract, the parties furnishing the same were entitled to recover.

APPEAL from the district court for Buffalo county. Heard below before HAMER, J.

*Lamb, Ricketts & Wilson,* for appellants:

Where, as in this case, notes have been given but the account is not adjusted, an itemized statement is not imperative, and the mechanics' lien law should be liberally construed in order to give effect to its provisions. (*Rogers v. Hotel Co.,* 4 Neb., 54; *Manly v. Downing,* 15 Id., 637; *Mfg. Co. v. Hensman,* 10 Ohio St., 152.) A single item for two houses on separate lots is a sufficient compliance with the first clause of section 3 of the mechanics' lien law. (*Doolittle v. Plenz,* 16 Neb., 153; *Ballou v. Black,* 17 Id., 389.) Under statutes like ours, a mere statement of the amount, without items, has been held sufficient. (*Brennan v. Swasey,* 16 Cal., 140; *Selden v. Meeks,* 17 Id., 128; *Ricker v. Joy,* 72 Me., 106; *Sexton v. Weaver,* 141 Mass., 273; *Lonkey v. Wells,* 16 Nev., 271.) Three remedies are open to a purchaser with a warranty. (1 Benjamin on Sales, sec. 894; *Smith v. Evans,* 13 Neb., 314; *Merrill v. Nightengale,* 39 Wis., 247.) None of these has Hanson sought to employ. His only evidence is to the effect that the apparatus as a whole would not work, which might be true and yet not form a defense coming under any recognized rule of law.

*Moore & Jones,* for appellees Hanson and Moore:

Appellants have no lien since they failed to file a copy of their written contract, and an itemized statement of the labor and material furnished. (Comp. Stats., ch. 54, art. 1, sec. 3; *Manly v. Downing,* 15 Neb., 637.) The mechanics' lien law is purely statutory, and one who seeks the aid of its provisions must show a strict compliance with them. (Wells, Mechanics' Liens, p. 15; *Green v. Ely,* 2 G. Greene [Ia.], 508.) The cases cited by appellant, on this branch of the case, are not in point.

MAXWELL, J.

This action was brought in the district court of Buffalo county, by the plaintiff against the defendants, to foreclose a mechanic's lien on certain premises in the city of Kearney. To this petition Cooper & Cole Bros., partners, filed an answer in the nature of a cross-petition. To this answer, asking affirmative relief, Robt. A. Moore filed an answer in which he alleged, in substance, that he was a *bona fide* purchaser of said premises after the filing of the alleged lien, and that he had no notice, actual or constructive, of the alleged lien of Cooper & Cole Bros., and that, therefore, he is entitled to protection, and as to him at least, such lien is void.

The claim of the plaintiff was satisfied before the trial, and hence the contest was between the defendants on the issues made by the pleadings.

The court found against Cooper & Cole Bros. and dismissed the action as to them, from which they appealed to this court.

Two questions are presented by the record : First—Had Cooper & Cole Bros. a valid lien upon the premises? And, second—Did they comply with the terms of a certain contract which will presently be set out?

The proceedings to obtain a lien were as follows :

"' $261.50.          KEARNEY, NEB., Jan. 19, 1887.

"' Fifteen days after date, I promise to pay to the order of W. J. Cooper & Cole Bros., at First National Bank Kearney, the sum of $261.50, value received, with ten per cent interest from date, the interest payable annually. Defaulting interest to draw same rate of interest as principal; and I agree to pay a reasonable attorney's fee, provided by law, for the collection of this note, in case it shall be collected by attorney or by suit. The attorney's fee to be taxed as part of the costs of the case.

"' C. E. HANSON.'

38

"January 19, 1887, to one note in the words and figures following :

"'$261.50.        KEARNEY, NEB., January 19, 1887.

" Thirty days after date, I promise to pay to the order of W. J. Cooper & Cole Bros., at the First National Bank of Kearney, the sum of $261.50, value received, with ten per cent interest, the interest payable annually. Defaulting interest to draw same rate of interest as principal; and I agree to pay a reasonable attorney's fee, as provided by law, for the collection of this note, in case it shall be collected by attorney or by suit. The attorney's fee to be taxed as part of the costs of the case.        C. E. HANSON.

"'No. 6014.'

" Total amount due on the above notes is $523, together with interest at ten per cent from January 19, 1887.

" STATE OF NEBRASKA, ⎫
" LANCASTER COUNTY, ⎬ ss.

" W. J. Cooper, being first duly sworn, deposes and says that he is one of the firm of W. J. Cooper & Cole Bros.; that the above notes, amounting to $523, against C. E. Hanson are just and correct and that the same now remain owing and unpaid to the said W. J. Cooper & Cole Bros.; that said notes were given on an adjustment for material and work furnished and done by the said firm of W. J. Cooper & Cole Bros., to the said C. E. Hanson, between the 1st day of October, 1886, and the 19th day of January, 1887, in pursuance to a written contract between the said firm of W. J. Cooper & Cole Bros. and the said C. E. Hanson; said material was furnished and said work was done in and about the placing of a steam heating plant in a certain house or building situated upon lot No. 371 in the original town of Kearney Junction, Buffalo county, Nebraska, which lot was owned by said C. E. Hanson at the time said contract was entered into and said material furnished and said work done, and the said W. J. Cooper & Cole

Bros. claim a lien upon said premises as security for the payment of said notes."

This was duly signed and sworn to by Cooper and filed in the proper office within the time required by law. The statute authorizes the filing of a copy of the notes given for labor or material used in the construction or repair of a building where there is a contract, expressed or implied, to obtain a mechanic's lien. To obtain the lien it must appear from papers filed in the case for that purpose that the labor or material was furnished in pursuance of a contract, express or implied, for the erection or repair of the building in question. Properly the items should be set out at length on a paper attached to the copy of the notes.

The writer, several years ago, in view of the embarrassment frequently arising from this class of liens, gave a form of a lien based upon a note for labor or material. (Maxw., Practice in Justice's Court [5th Ed.], 565-6.) The affidavit in the case at bar alleges that the goods were furnished in pursuance of a written contract, etc., and that the "material was furnished and said work was done in and about the placing of a steam heating plant in a certain house, etc., owned by C. E. Hanson," etc. This affidavit and the proceedings to obtain a lien are quite informal, but we do not think they are void. The giving of the notes by Hanson was an agreement on his part that the amount expressed therein was due and it does clearly appear from the papers in that case for what purpose the notes were given.

Such lien placed in the proper record of the county within the time required by law is notice to every person of the claim against the land and he cannot shut his eyes to the existence of such claim.

The mechanic's lien law, being remedial in its nature, is to receive a liberal construction, so far as the proceedings to obtain and enforce the lien are concerned.

Of course questions as to the amount due must be deter-

mined like other questions of fact, and the lien given merely provides a remedy for the collection of the claim. In our view, the lien in this case was sufficient to entitle Cooper & Cole Bros. to relief, and to charge a purchaser with notice.

Moore, therefore, purchased subject to said lien, and is bound thereby. Moore claims that there is no denial in the reply that he was a *bona fide* purchaser, and that therefore the fact is admitted. This is a mistake of fact, however, as Cooper & Cole Bros. in the pleadings claim a lien superior to the rights of Moore, and allege that he purchased subject to their claim. There is no admission therefore, that he was a *bona fide* purchaser.

The following is the contract between Cooper & Cole Bros. and Hanson:

"KEARNEY, NEB., 1/1/'86.

"I hereby authorize and contract with W. J. Cooper & Cole Bros., of Lincoln, Neb., to put in steam heating apparatus in my new store, now building at Kearney, and also in new store building north of mine, as follows:

"To put in radiators in both store rooms and in second story of my building, also to run risers into second story of building adjoining mine on north, said risers to be capped. Marble tops on all radiators on first floor, except in prescription room. Boilers, as also labor as far as I wish, to be furnished by me. Said job to be put in successful operation by the said W. J. Cooper & Cole Bros. I agree to pay frt. on all material shipped, as also a reasonable profit on the whole job; all to be finished as soon as possible. Payment for same to be made by me to the said W. J. Cooper & Cole Bros. *in cash* upon completion, or part payment to be made while in progress, as we may agree.

"Job, as furnished by us [last four words interlined] to be first class in all respects.

(Signed) "C. E. HANSON."

It is claimed that the words in quotation, "as furnished by us," to be first class in all respects, being interlined, were inserted after the signing of the contract. Upon this point there is a direct conflict in the evidence, and it is impossible to determine what the exact facts are in regard to it. Where such an interlineation is made before signing, a note to that effect should be made on the margin, and thus all question as to the time when the alteration was made ordinarily would be put to rest. We do not deem the question material in this case, however, as it is evident from all the testimony that the material to be furnished by Cooper & Cole Bros. was to be of good quality. It will be observed that it is provided in the contract that Hanson was to furnish the boilers and "also all labor as far as I wish."

The boiler was furnished by Hanson and seems to have been old and in bad condition, and wholly unfit for the purpose of generating steam for heating the rooms intended.

One R. M. Curtis, a witness called by Cooper & Cole Bros., testified in his direct examination in regard to the boiler and apparatus as follows:

Q. Did you have charge of this heating apparatus at one time?

A. I was running it for a short time.

Q. Did you first take charge of it?

A. No, sir.

Q. How long did it run before you took charge?

A. Three or four days.

Q. State the condition of the building when you first took charge, as to exposures or openings.

A. Where the boiler was it was closed up, but up-stairs the doors were not all closed; they were plastering and finishing up.

Q. Was steam sent into any of those rooms to dry the plastering?

A. Yes, sir.

Q. State how the thing worked at that time under those trying circumstances.

A. It seemed to work all right at that time; it seemed to take a good deal of coal.

Q. Could you heat the room?

A. Yes, sir, if they would let the radiators alone; the carpenters kept turning them off and on.

Q. When the radiators were let alone how did they work?

A. All right, except one room in the northeast corner, that was where one pipe had a wrong branch.

Q. What had been your business before that time?

A. I had been working for Hanson.

Q. Working at pipe fitting?

A. Yes, sir, some.

Q. State if the apparatus continued to do good work while you remained with it, or if anything happened to cause it to do poor work.

A. Well, nothing happened except in that room one of the pipes froze up and burst.

Q. Was fire kept all night?

A. It was part of the time, and part of the time I staid there until eleven o'clock and would then pack the fire.

Q. Did the boiler leak?

A. Yes, sir.

Q. Did it get worse?

A. Yes, sir.

Q. Any extra pressure put on at any time?

A. Yes, there was one night.

Q. How much water was necessary at first to keep it going twenty-four hours?

A. Three or four pailfuls.

Q. And after this leakage occurred, how much water was required?

A. Well, a good deal more.

Q. How often did you have to put in cold water?

A. I think I would pump a little about every hour.

Q. What effect would that have on the steam?

A. It would lower the steam.

Q. Did it increase the amount of fuel?

A. Yes, sir.

Q. About how long after you commenced to fire before this leak showed?

A. Perhaps three weeks.   It leaked some all the time.

Q. Where was the first leak?

A. In the man-heads.

Q. And where was the leak afterwards?

A. In the flues; it leaked there a little all the time.

Q. You were not able to tell how high the pressure was put on nights when you were not there?

A. No, sir; another man was on at night, or two men ; they would change off.

Q. Who brought them there to relieve you?

A. They were sent there by Hanson.

Q. Do you know whether they had any experience or not?

A. I do not.

Q. With a good boiler, would this apparatus have produced good heat in your judgment?

A. I think so; I think this boiler would have worked all right but for the leaking.

Cooper & Cole Bros. merely furnished the pipes, radiators, etc., in other words the conduits by which the steam was carried from the boiler into the several rooms, and to be used in heating such rooms.

So far as appears, these pipes and radiators were adequate for the purpose intended, and seem to have given Hanson satisfaction, or he would not have practically accepted the same and given his notes therefor.

The pipe that had a wrong branch, and, therefore, did not work properly in that room, so far as appears, was placed just as Hanson desired it.  By giving his notes for

the balance due, Hanson, in effect, admitted the correctness of the account and his approval of the work and material. There is considerable complaint in the evidence about the quantity of coal required to heat the rooms in question, but the remedy for that defect lay in procuring a new boiler capable of generating the greatest quantity of steam from the least amount of fuel.

Steam was the agent to be used to heat the rooms in question, and unless this was furnished in sufficient quantity, the pipes to convey the same and the radiators would be comparatively useless, but the blame should not be placed on such pipes and radiators. Suppose the boiler on a locomotive would not generate sufficient steam to propel a train, could the blame be laid on the driving wheels? And would it be sufficient cause on the part of a railway company to refuse to receive and pay for them, that for want for sufficient power they could not be caused to revolve? Or that the power, if sufficient, was produced at too great an expenditure of fuel? No one will so contend, yet it would be as reasonable to charge the failure to produce steam in a locomotive to the driving wheels as to charge the same failure in the heating plant of a house upon the pipes and radiators.

This defense is principally insisted on by the purchaser of the premises. Hanson is brought in because he is the only one that can insist upon the defects complained of; but in an action against him alone, it may well be doubted whether these alleged defects would have been set up, but the defense is unavailing.

The judgment of the district court is reversed, and a judgment will be entered in this court for the amount due on the notes, and to foreclose a lien on the premises.

JUDGMENT ACCORDINGLY.

THE other judges concur.